# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| CONEX HOLDINGS, LLC, et al. | : | Case No. 11-10501(CSS) |
| | : | |
| Debtors. | : | Jointly Administered |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | : | |
| | : | |
| CHARLES A. STANZIALE, JR., in his | : | |
| capacity as the Chapter 7 Trustee of | : | |
| Conex Holdings, LLC, Conex | : | |
| International, LLC, and Advantage | : | |
| Blasting & Coating, Inc. | : | |
| | : | |
| Plaintiff, | : | |
| | : | Adv. Proc. No.: 13-50939(CSS) |
| v. | : | |
| | : | |
| COPPERCOM, INC., | : | |
| | : | |
| Defendant. | : | |

## OPINION[1]

**COUSINS CHIPMAN & BROWN, LLP**
William E. Chipman, Jr.
Mark D. Olivere
1007 North Orange Street, Suite 1110
Wilmington, DE 19801

    -and-

**SPERLING & SLATER, P.C.**
Bruce S. Sperling
Robert D. Cheifetz

**McCARTER & ENGLISH, LLP**
Katharine L. Mayer
405 N. King Street, 8th Floor
Wilmington, DE 19801

    -and-

Charles A. Stanziale, Jr.
Jeffrey T. Testa
Michael J. Reynolds
Four Gateway Center

---

[1] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 . . . ." Fed R. Bankr. P. 7052(a)(3). Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

Eamon P. Kelly                                    100 Mulberry Street
55 W. Monroe, Suite 3200                          Newark, NJ 07102
Chicago, IL 60603
                                                  Counsel to Plaintiff, Charles A.
Counsel for Defendant                             Stanziale, Jr., Chapter 7 Trustee


Dated:  October 23, 2014

Sontchi, J. _____

## INTRODUCTION

Charles A. Stanziale, Jr., Chapter 7 Trustee (the "Trustee") for Conex Holdings, LLC ("Holdings"), Conex International, LLC ("Conex"), and Advantage Blasting & Coating, Inc. ("ABC" and together with Holdings and Conex, the "Debtors") filed a complaint[2] against their parent company CopperCom, Inc. ("CopperCom" or the "Defendant") (i) seeking turnover of property pursuant to Bankruptcy Code Section 542, (ii) alleging breach of the implied covenant of good faith and fair dealing, (iii) alleging unjust enrichment, and (iv) seeking avoidance and recovery of transfers pursuant to Bankruptcy Code Sections 549 and 550, respectively.  As the parent company of the Debtors, CopperCom filed consolidated federal income tax returns that included Conex, Holdings, and ABC (the "CopperCom Group").  The Trustee's claims rely on allegations concerning CopperCom's use and retention of net operating losses ("NOLs") and the federal income tax benefits derived therefrom.

---

[2] Adv. Pro. No. 13-50939, D.I. 1 ("Complaint").  Unless otherwise noted, all references to the docket are for Adv. Pro. No. 13-50939.

CopperCom moves to dismiss the Complaint in its entirety (the "Motion to Dismiss").  For the reasons set forth below, the Court will grant with prejudice the Motion to Dismiss Count I for turnover of an alleged $2.559 million receivable due to Conex from CopperCom for use of Conex's 2008 NOL.  The Court will grant without prejudice the Motion to Dismiss Count II for breach of the implied covenant of good faith and fair dealing, Count III for unjust enrichment, Count IV for avoidance of transfers pursuant to Bankruptcy Code Section 549, and Count V for recovery and preservation of any transfers avoided pursuant to Bankruptcy Code Section 550.  The Trustee has not pleaded adequate facts in support of his claims; however, the Court grants the Trustee leave to amend the Complaint within twenty-eight (28) days of the issuance of this opinion to adequately plead facts to support Counts II, III, IV, and V.

## JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(A),(E), and (O).  The Court has the judicial authority to enter a final order.

## STATEMENT OF FACTS

### A. Procedural Background

On February 20, 2011 (the "Petition Date"), Wells Fargo Bank, N.A., Bank of Montreal, and The Prudential Insurance Company of America filed involuntary petitions

for relief against the Debtors.[3]  On February 24, 2011, the Court entered an order for relief under Chapter 7 of the Bankruptcy Code with respect to the Debtors' cases.[4]  On February 24, 2011, the Office of the United States Trustee for the District of Delaware appointed Charles A. Stanziale, Jr. as the Chapter 7 Trustee of the Debtors' estates.[5]  On March 11, 2011, the Court entered an order providing for the joint administration of the Debtors' cases.[6]

On April 22, 2013, the Trustee initiated an adversary proceeding against the Debtors' parent company, CopperCom, for turnover of an open receivable due to Conex arising from the Defendant's use of Conex's 2008 NOL and the tax benefit derived therefrom; breach of the implied covenant of good faith and fair dealing based on the Defendant's breach of an (alleged) implied-in-fact tax allocation agreement (the "TAA") relating to the Defendant's use of the tax benefit derived from Conex's 2009-2011 NOLs; or, in the alternative, unjust enrichment for the retention and utilization of Conex's 2009-2011 NOLs; and for avoidance and recovery of the value of the Debtors' 2010-2011 NOLs to the extent the NOLs were used by the CopperCom Group in its consolidated federal income tax returns filed for those years.[7]  The Defendant filed the Motion to Dismiss,[8] the

---

[3] Del. Bankr. No. 11-10501, D.I. 1.

[4] Del. Bankr. No. 11-10501, D.I. 21.

[5] Del. Bankr. No. 11-10501, D.I. 25.

[6] Del. Bankr. No. 11-10501, D.I. 46.

[7] Complaint at ¶¶ 1, 46-68.

[8] D.I. 15 ("Motion to Dismiss").

Trustee filed an objection,[9] and the Defendant filed a reply brief.[10]  Briefing is complete and the matter is ripe for decision.

### B. Parties

CopperCom, a subsidiary of Heico Holding, Inc. ("Heico"), is a Florida corporation with its principal place of business in Florida.[11]  Holdings is a Delaware limited liability company with its principal place of business in Illinois and an acquisition company of Heico.[12]  CopperCom owns 100% of all interests in Holdings.[13]  Conex is a Texas limited liability company with its principal place of business in Texas.[14]  Holdings owns 100% of all interests in Conex.[15]  ABC is a corporation organized under the laws of the State of Texas with its principal place of business in Texas.[16]  CopperCom, as designee of Heico, holds more than 80% of the common shares of ABC.[17]

On August 7, 2008, Conex International, Corp., predecessor-in-interest to Conex, changed its form and structure so as to sell itself to Heico.  Conex converted to a limited liability company and changed its name from Conex International Corp. to Conex International, LLC.  On that date, Conex was a wholly owned subsidiary of Conex

---

[9] D.I. 21 ("Opposition"), p. 19.

[10] D.I. 25 ("Reply").

[11] Complaint at ¶ 10.

[12] *Id.* at ¶ 7.

[13] *Id.*

[14] *Id.* at ¶ 8.

[15] *Id.*

[16] *Id.* at ¶ 9.

[17] *Id.*

Holdings, Inc.  On August 8, 2008, Conex Holdings, Inc. transferred to Holdings, a special purpose LLC created to facilitate the acquisition, its interests in Conex and ABC.

On or about September 19, 2009, CopperCom and its subsidiaries filed a 2008 federal income tax return ("2008 Consolidated Tax Return").[18]  The first tax year that Holdings, Conex, and ABC were included in the CopperCom Group's consolidated tax return was for the year ending December 31, 2008.[19]  Holdings and Conex were treated as disregarded entities for federal income tax purposes, and CopperCom, as the single member of the disregarded entities, was treated as directly holding Holdings' and Conex's assets and liabilities.[20]

### C.  Factual Background

#### 1.  Facts Relevant to the Utilization of Conex's 2008 NOL and the Recordation of the Receivable Due to Conex from CopperCom

For the year ending December 31, 2008, CopperCom, as the Debtors' parent company, included the Debtors in the 2008 Consolidated Tax Return.[21]  Conex's pre-tax book loss for the post-acquisition stub period (August 9, 2008 to December 31, 2008) was $7.797 million.  CopperCom used Conex's 2008 NOL in the 2008 Consolidated Tax Return to reduce the taxable income of the profitable members of the CopperCom Group.  The

---

[18] *Id.* at ¶ 27.

[19] *Id.*

[20] *Id.*

[21] *Id.* at ¶ 30.

estimated income tax benefit derived by the CopperCom Group for the use of Conex's 2008 NOL was $2,644,171.41.[22]

The tax benefit to CopperCom was recorded in Conex's General Ledger Account as a federal income tax expense with an offsetting entry in the same amount described as "Due From Parent Company." As a result of certain year-end adjustments, the tax benefit amount originally accrued was reduced. Conex's audited statement of earnings for the period from August 8, 2008 to December 31, 2008 reflects Conex's loss before income taxes being reduced to $7.256 million. Conex's General Ledger Account reflects a receivable due Conex from CopperCom of $2,559,369.81 (the "Receivable") as of December 31, 2008.

The Receivable due Conex from CopperCom's use of Conex's 2008 NOL is reflected in an audit report prepared by Deloitte & Touche LLP for the year ending December 31, 2008 (the "2008 Audit Report").[23] The 2008 Audit Report identifies the Receivable due Conex from CopperCom and provides in relevant part: "In addition . . ., a tax benefit to be derived from the Parent [CopperCom] for federal income taxes of

---

[22] *Id.* The Trustee multiplies Conex's $7.797 million pre-tax book loss by the effective tax rate of 34% to determine the estimated tax benefit amount. *Id.* at ¶ 32 n.3.

[23] The 2008 Audit Report provides in relevant part:

> The Company [Holdings, Conex and ABC] files a consolidated federal income tax return with the Parent [CopperCom]. The benefit for federal income taxes recorded in the consolidated financial statements represents the allocated benefit to be derived from the Parent without regard to the lower marginal tax rates which may be retained by the Parent.
> The Company is a member of a group of companies that file a consolidated income tax return. As a member of that group, the tax benefit has been allocated to the Company as if the Company were a separate tax payer. As a result of the allocation of the tax benefit, the Company has recorded a receivable from the Parent [CopperCom], which is recorded in other long-term liabilities on the accompanying consolidated balance sheet.

*Id.* at ¶¶ 34-35.

$2,559[,000] has been recorded in other long-term liabilities."[24]  Similarly, the Debtors'

2009 draft audited consolidated financial statements reflect the Receivable due Conex

from CopperCom on the Debtors' balance sheet as of December 31, 2009.  The 2009

consolidated financial statement provides that "the tax benefit to be derived from the

Parent [CopperCom] for federal income taxes of $2.559 million has been recorded in other

long-term liabilities in 2008 and remains recorded as of December 31, 2009."[25]

Conex's management-prepared financial statements for the year ending December

31, 2010 also reflect the Receivable due from CopperCom.  Conex's balance sheet as of

December 31, 2010 reflects the Receivable as due and owing in its balance sheet asset

account.  The Receivable was never paid and remains due and owing to Conex.

### 2. Facts Relevant to the Utilization of Conex's 2009, 2010, and Subsequent Years' NOLs

For 2009, Conex reported a book loss before taxes of approximately $160.7 million

and a taxable loss of approximately $22.8 million. The CopperCom Group reported a

consolidated book loss of approximately $149 million and a taxable loss of approximately

$19.3 million.  The profitable members of the CopperCom Group utilized $7,367,751 of

Conex's taxable loss to offset the profitable members taxable income resulting in a tax

savings of $2,505,035.

The Trustee asserts that the General Ledger Accounts demonstrate that Conex was

recording a reduction to its federal income tax expense on a monthly basis based on the

---

[24] *Id.*

[25] *Id.*

accrued benefit it was expecting to derive from the utilization of its 2009 NOL by the profitable members of the CopperCom Group and recording the benefit as an increase in the receivable due from CopperCom.  Conex recorded an increase in its receivable due from CopperCom on a monthly basis throughout 2009 and through March 2010.  Conex's 2009 General Ledger Account reflects a monthly addition to the balance of the receivable due Conex from CopperCom throughout 2009 and also contains an offsetting entry.  The Trustee alleges that the description "FIT Benefit" provided in the General Ledger for the increase in the receivable account means "Federal Income Tax Benefit."

The aggregate of the 2009 monthly tax benefits recorded as a receivable due to Conex from CopperCom was reversed by a single audit entry reflected in the 2009 General Ledger which purports to be recorded on December 31, 2009.  The Trustee believes, however, that this entry was in fact actually recorded in April 2010, because Conex's 2010 General Ledger Account No. 17150 does not reflect the reversal being recorded until April 13, 2010.

## LEGAL DISCUSSION

### A.  Motion to Dismiss Standard

The Defendant seeks dismissal of the action on the grounds that the Trustee has failed to state a claim for which relief can be granted.  This motion, under Rule 12(b)(6),[26]

---

[26] Rule 7012(b) of the Federal Rules of Bankruptcy Procedure incorporates Rule 12(b)(6) of the Federal Rules of Civil Procedure in adversary proceedings.

tests the sufficiency of factual allegations pleaded in the Plaintiff's complaint.[27]  With the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*[28] and *Ashcroft v. Iqbal,*[29] "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss."[30]

In *Iqbal*, the Supreme Court makes clear that the *Twombly* "facial plausibility" pleading requirement applies to all civil suits in the federal courts.[31]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to survive motions to dismiss.[32]  Rather, "all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible."[33]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[34] Determining whether a complaint is "facially plausible" is "a context-specific task that

---

[27] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) ("The pleader is required to set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist." (citations omitted)).

[28] 550 U.S. 544 (2007).

[29] 556 U.S. 662 (2009).

[30] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[31] *See Fowler*, 578 F.3d at 210.

[32] *Iqbal*, 556 U.S. at 678.  *See also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) ("[A] court need not credit a plaintiff's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." (quotations omitted)); *Bartow v. Cambridge Springs SCI*, 285 Fed. Appx. 862, 863 (3d Cir. 2008) ("While facts must be accepted as alleged, this does not automatically extend to bald assertions, subjective characterizations, or legal conclusions." (quotations omitted)).

[33] *Fowler,* 578 F.3d at 210 (internal quotations omitted).

[34] *Iqbal,* 556 U.S. at 678.

requires the reviewing court to draw on its judicial experience and common sense.[35]  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but not effectively shown, that the pleader is entitled to relief."[36]

After *Iqbal*, the Third Circuit has instructed this Court to "conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated. The [court] must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."[37]  The court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief."[38] The Third Circuit has further instructed that "[s]ome claims will demand relatively more factual detail to satisfy this standard, while others require less."[39]

---

[35] *Id.* at 679.

[36] *Id.* (citations and internal quotations omitted).

[37] *Fowler,* 578 F.3d at 210–11; *Iqbal*, 556 U.S. at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Carino v. Stefan*, 376 F.3d 156, 159 (3d Cir. 2004).  The Court may also consider documents attached as exhibits to the complaint, any documents incorporated into the complaint by reference, and matters of the public record.  *In re Fruehauf Trail Corp.*, 250 B.R. 168, 183 (Bankr. D. Del. 2000) (citing *PBGC v. White*, 998 F.2d 1192, 1196 (3d Cir. 1993)); *see also Sands*, 502 F.3d at 268.  Yet "if the allegations of [the] complaint are contradicted by documents made a part thereof, the document controls and the Court need not accept as true the allegations of the complaint."  *Sierra Invs., LLC v. SHC, Inc. (In re SHC, Inc.)*, 329 B.R. 438, 442 (Bankr. D. Del. 2005) (quoting *ESI, Inc. v. Coastal Power Prod. Co.*, 13 F. Supp. 2d 495, 497 (S.D.N.Y. 1998)).

[38] *Fowler,* 578 F.3d at 211 (internal quotations omitted).

[39] *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 361 (3d Cir. 2010).

**B. Net Operating Losses**

The claims asserted in this adversary proceeding concern the Defendant's use of

NOLs generated by Conex in federal income tax returns filed by the Defendant.   The

Internal Revenue Code ("I.R.C.") rules govern the use of NOLs:

> NOLs occur when a corporation's operating losses exceed income. In such
> instances, corporate taxpayers are entitled to deduct NOL carryovers and
> NOL carrybacks in determining their taxable income in each taxable year.
> Carrying back NOLs for that purpose entitles the taxpayer to a refund of
> taxes attributable to the prior year's income offset by the carryback.   When
> carrying back NOLs, the taxpayer must first apply the NOLs to the oldest
> tax year to which it is permitted to carry back NOLs and in which it had
> reported income.   The taxpayer's income for a given tax return year could
> be reduced to zero if the NOLs carried back are large enough to cancel out
> income entirely for that year.[40]

Under IRS regulations during the periods relevant to this dispute, NOLs incurred by

Conex could be carried back three years and could also be carried forward for fifteen

taxable years.[41]   Each of the Trustee's claims involves CopperCom's use of Conex's

(alleged) NOLs as discussed below.

**C. Count I: Turnover of Estate Property under 11 U.S.C. § 542**

Section 542 provides the cause of action for turnover, which requires an entity in

possession of property of the estate to deliver the property, or value thereof, to the

trustee.[42]   A properly pleaded complaint asserting a claim for turnover must allege an

---

[40] *In re Marvel Ent. Grp., Inc.*, 273 B.R. 58, 64 (3d Cir. 2002) (internal citations omitted).

[41] 26 U.S.C. § 172.

[42] 11 U.S.C. § 542(a).

undisputed right to recover the claimed debt.[43]  Turnover is not appropriate where there is a legitimate dispute over ownership of the property.[44]

The Defendant argues that Count I should be dismissed because the Trustee has failed to allege that the Receivable is the undisputed property of Conex.  In support, the Defendant contends that federal income tax law treats Conex as a disregarded entity for federal income tax purposes, and as a result, all of Conex's income and losses passed through to the Defendant as the parent of Conex.  Therefore, Conex's NOLs for the tax years of 2008-2011 were deemed to be the losses of the Defendant for federal income tax purposes, and neither the NOLs nor the tax benefits derived therefrom are property of Conex's estate.

The Trustee alleges that "[a]s single member LLCs, both Conex and Holdings were treated as 'disregarded entities' for federal income tax purposes.   Under these circumstances, Coppercom, as owner of the disregarded entities, was treated as holding directly each entity's assets and liabilities."[45]  Conversely, the Trustee also alleges that the Receivable due to Conex results from the Defendant's use of Conex's 2008 NOL.

On the Petition Date, a bankruptcy estate was created to hold "all legal or equitable interests of the debtor in property as of the commencement of the case."[46]  The Petition Date sets a "date of cleavage" and "establishes the moment at which the parties'

---

[43] *In re Hechinger Investment Co. of Delaware, Inc.*, 282 B.R. 149, 162 (Bankr. D. Del. 2002).

[44] *Giuliano v. Fairfield Health Care Centers Limited P'ship (In re Lexington Healthcare Grp., Inc.)*, 363 B.R. 713, 716 (Bankr. D. Del. 2007).

[45] Complaint at ¶ 26.

[46] 11 U.S.C. § 541(a)(1).

respective rights in property must be determined."[47]  The scope of an estate's property

interests is broad.[48]

> Estate property includes all of a debtor's rights and expectancies and is a
> concept that "has been construed most generously and an interest is not
> outside its reach because it is novel or contingent or because enjoyment
> must be postponed." *Segal v. Rochelle*, 382 U.S. 375, 379 (1966); *see also, e.g.*,
> 11 U.S.C. § 541(c)(1)(A) (providing that assets become estate property
> notwithstanding any provision of nonbankruptcy law that would prevent
> their being liquidated or transferred by the debtor); H.R. REP. No. 95–595,
> at 175–76 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6136 (making clear
> that "property of the estate" includes all "contingent interests and future
> interests, whether or not transferable by the debtor").[49]

"In fact, every conceivable interest of the debtor, future, nonpossessory, contingent,

speculative, and derivative, is within the reach of [section] 541."[50]

A single member limited liability company ("SMLLC") "may elect to be classified

as an association taxable as a corporation or to be disregarded as a separate entity,

resulting in passthrough taxation of its sole member."[51]  If the SMLLC does not elect to

be classified as an association, it is treated as a disregarded entity.[52]  As a disregarded

entity, the SMLLC's assets, liabilities, income items, and deduction items will be treated

---

[47] *In re IndyMac Bancorp, Inc.*, 2:08–BK–21752–BB, 2012 WL 1037481, *12 (Bankr. C.D. Cal. Mar. 29, 2012).

[48] *Id*. (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204 (1983) and *In re Central Ark. Broad. Co.*, 68 F.3d 213, 214 (8th Cir. 1995)).

[49] *Id*.

[50] *Matter of Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993) (citations omitted).

[51] *Kandi v. U.S.*, 2006 WL 83463, *2 (W.D. Wash. Jan. 11, 2006) (citing 26 C.F.R. § 301.7701-3(a)).  For federal income tax purposes, an eligible entity, such as a single member LLC, can elect to be classified as an association, and thus a corporation under 26 C.F.R. § 301.7701-2(b)(2), or a partnership, or disregarded as an entity separate from its owner.  26 C.F.R. § 3307.7701-3(a).

[52] 26 C.F.R. § 301.7701-3(b)(1)(ii); *see Kandi*, 2006 WL 83463 at *2.

as owned, owed, received, and incurred directly by its owner.[53]  The result is that the member is treated as "personally engaging in the transactions engaged in" by the SMLLC.[54]

The allegations show that Conex's claim to the Receivable is not undisputed because, on the one hand, the Trustee alleges that Holdings' and Conex's assets and liabilities (including tax benefits related to NOLs) were treated as held directly by the Defendant for federal income tax purposes, and on the other hand, alleges that the Receivable is due and owing to Conex.

Because the Trustee has alleged that Conex and Holdings were disregarded entities for federal income tax purposes, federal income tax law indicates that the Defendant directly held Conex's assets and liabilities, which included any tax benefits or liabilities derived from its operating losses in 2008.  Section 542 is a remedy available to debtors to obtain what is acknowledged to be property of the bankruptcy estate,[55] and the Trustee has failed to allege an *undisputed* right to recover the Receivable.  Indeed, the I.R.C. precludes the Trustee from pleading this undisputed right to the Receivable—and

---

[53] 26 C.F.R. § 301.7701-2(c)(2)(i). A business entity that has a single owner and is not a corporation, such as a single member LLC, is disregarded as an entity separate from its owner. *Id.*  "Under federal tax law, a single-member LLC that does not make an election is a disregarded entity—a tax nothing."  *Markell Co., Inc. v. C.I.R.*, 107 T.C.M. 1447 n.12 (2014) (citing 26 C.F.R. § 301.7701–3(b)(1)(ii)). 26 C.F.R. § 301.7701-2(a).

[54] *Markell Co., Inc. v. C.I.R.*, 107 T.C.M. 1447 n.12 (2014) (citing 26 C.F.R. § 301.7701–3(b)(1)(ii)).  "A significant amount of case law has emerged in determining ownership of tax refunds between parents and their subsidiaries arising from consolidated tax returns filed on behalf of the group."  *In re Vineyard Nat. Bancorp*, 2013 WL 1867987, *7 (Bankr.C.D.Cal. May 3, 2013).  Several courts have held that NOLs are property of a debtor's estate in the context of a tax allocation agreement, *see, e.g., In re Prudential Lines Inc.*, 928 F.2d 565 (2d Cir. 1991), however those cases are distinguishable because they involved tax-paying C-corporations, not single member LLCs that have not elected to be taxed as corporations.

[55] *Hechinger*, 282 B.R. at 161-62 (quoting *In re Asousa P'ship.*, 264 B.R. 376, 384 (Bankr. E.D. Pa. 2001)).

thus a turnover claim—because Conex's NOLs and the right to use them passed through by operation of federal income tax law to the Defendant.[56]  Any tax benefits derived from the Defendant's use of Conex's NOLs inured solely to the benefit of the Defendant as Conex's single member.[57]  Based on the facts alleged in the Complaint and the inferences reasonably drawn therefrom, Count I fails to state a claim upon which relief can be granted.  The Court will dismiss the Trustee's turnover claim with prejudice.[58]

### D. Count II: Breach of the Implied Covenant of Good Faith and Fair Dealing with Respect to the CopperCom Group's Use of Conex's 2009-2011 NOLs

Delaware courts have "recognized the occasional necessity of implying contract terms to ensure the parties' reasonable expectations are fulfilled."[59]  The "implied covenant of good faith and fair dealing is recognized only where a contract is silent as to

---

[56] *In re Majestic Star Casino, LLC*, 716 F.3d 736, 759 (3d Cir. 2013) (quoting *Official Comm. Of Unsecured Creditors of Forman Enters., Inc. v. Forman (In re Forman Enters., Inc.)*, 281 B.R. 600, 612 (Bankr. W.D. Pa. 2002) ("Any tax benefits resulting from the NOL and the right to use it inure solely to the benefit of . . . shareholders and would not be available to satisfy claims of the corporation's creditors.").  The debtor in *Majestic Star Casino* was an S-corporation.  Federal income tax law provides that an S-corporation, like a SMLLC, is a disregarded entity and is not taxed on its income.  *See* 26 U.S.C. § 1363(a).

[57] *Majestic Star Casino*, 716 F.3d at 759.

[58] The Trustee clarifies Count I in his Opposition: "The Trustee also does not dispute that Defendant, as the sole member of Holding LLC, the parent of Conex, had control over the utilization of Conex's NOLs. But, those facts are not relevant in this dispute." Opposition, pp. 19-20.  Rather, the Trustee argues that the Defendant and Conex from entered into the TAA as evidenced by the parties' course of performance recordation of the Receivable.  *Id.*  These allegations are made in the Opposition, not in the Complaint, and do not make the claim any more plausible.  In substance, the Trustee argues that the Defendant's breach of the TAA by not delivering the Receivable to Conex creates an undisputed right to the Receivable.  On these grounds, the Trustee has also failed to allege a claim upon which relief can be granted because the Trustee "cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute." *U.S. v. Inslaw, Inc.*, 932 F.2d 1467, 1472 (D.C. Cir. 1991); *see also In re Charter Co.*, 913 F.2d 1575, 1579 (11th Cir. 1990); *In re Satelco, Inc.*, 58 B.R. 781, 786 (Bankr. N.D. Tex. 1986); *In re Chick Smith Ford, Inc.*, 46 B.R. 515, 518 (Bankr. M.D. Fla. 1985); *In re FLR Co.*, 58 B.R. 632 (Bankr. W.D. Pa. 1985).

[59] *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) (citations and internal quotations omitted). *See also AQSR India Private, Ltd. v. Bureau Veritas Holdings, Inc.*, C.A. No. 4021–VCS, 2009 WL 1707910, at *11 (Del. Ch. June 16, 2009).

the issue in dispute."[60]  To state a claim for breach of the implied covenant of good faith

and fair dealing, a party "must allege (i) a specific implied contractual obligation, (ii) a

breach of that obligation by the defendant, and (iii) resulting damage to the plaintiff."[61]

> Absent a contractual provision dictating a standard of conduct, there is no
> legal difference between breaches of contract made in bad faith and
> breaches of contract not made in bad faith.  Both are simply breaches of the
> express terms of the contract.[62]

"The doctrine thus operates only in that narrow band of cases where the contract

as a whole speaks sufficiently to suggest an obligation and point to a result, but does not

speak directly enough to provide an explicit answer."[63]  "The covenant is best understood

as a way of implying terms in the agreement, whether employed to analyze unanticipated

developments or to fill gaps in the contract's provisions."[64]

The Defendant argues that Count II should be dismissed because (i) there is no

free-standing cause of action for breach of the implied covenant of good faith and fair

dealing pursuant to Delaware law,[65] (ii) the Court cannot imply or infer an obligation by

---

[60] *AQSR India Private, Ltd. v. Bureau Veritas Holdings, Inc.*, C.A. No. 4021–VCS, 2009 WL 1707910, at *11 (Del. Ch. June 16, 2009).

[61] *Kelly v. Blum*, 2010 WL 629850, at *13 (Del. Ch. Feb. 24, 2010).

[62] *AQSR India Private, Ltd. v. Bureau Veritas Holdings, Inc.*, C.A. No. 4021–VCS, 2009 WL 1707910, at *11 (Del. Ch. June 16, 2009) (citations omitted). *See* 17A Am.Jur.2d Contracts § 712 ("[A]llegations of malicious, knowing, wanton and willful behavior do not give rise to a separate tort action where no wrongful conduct, except the breach of contract, is asserted.").

[63] *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 146 (Del. Ch. 2009).

[64] *Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 441 (Del. 2005).

[65] The Defendant contends that "[u]nder the Operating Agreement, Delaware law applies to claims against CopperCom."  Motion to Dismiss at p. 13 n.8.  The Trustee applies Delaware law.  Opposition at p. 27 n.10. Section 16.2 of Conex's Operating Agreement provides that Texas law governs, whereas Section 14.2 of Holdings's Operating Agreement provides that Delaware law governs.  Motion to Dismiss, Exhs. A-B. Conex is a Texas corporation, Holdings is a Delaware corporation, and CopperCom is a Delaware corporations.

the Defendant to pay Conex for use of the NOLs when allocation of Conex's losses are addressed in the Operating Agreement, (iii) the Trustee fails to allege that Conex could have reasonably expected payment for the use of the NOLs, and (iv) there is no rational reason to require the Defendant to pay for tax savings resulting from Conex's NOLs.

Count II for breach of the implied covenant of good faith and fair dealing alleges that the Defendant breached the covenant by failing to reimburse Conex for the amount of tax savings ($2,505,035) realized for the 2009-2011 tax years and by unilaterally rescinding the TAA in April 2010, thereby frustrating the purpose of the TAA.

The Court will consider the Operating Agreements of Conex and Holdings annexed to the Motion to Dismiss and still treat the matter under the Fed. R. Civ. P. 12(b)(6) standard because the Operating Agreements fall within the Third Circuit's "integral exception" doctrine.[66] The Operating Agreements are integral to the Complaint and explicitly relied on by the Trustee because the Trustee alleges that Conex and Holdings are single member LLCs and were treated as disregarded entities for federal income tax purposes.[67] This information is contained in the Conex Operating Agreement

---

[66] *In re Mervyn's Holdings, LLC*, 426 B.R. 488, 496 (Bankr. D. Del. 2010); *see also In re Burlington Coat Factory Securities Lit.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (noting that an exception to the general rule that a court may not consider matters extraneous to the pleadings is that a "document integral to or explicitly relied upon in the complaint" may be considered "without converting the motion [to dismiss] into one for summary judgment") (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (3d Cir. 1996). The Trustee is presumably on notice of the Operating Agreements by virtue of being the trustee of the Debtors' estates. *See Burlington Coat*, 114 F.3d at 1426 ("[T]he rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint — lack of notice to the plaintiff — is dissipated.").

[67] Indeed, the Trustee alleges:

> Both Conex and Holdings are single member limited liability companies ("LLCs") with Conex wholly owned by Holdings, and Holdings wholly owned by CopperCom. As single member LLCs, Both Conex and Holdings were treated as "disregarded entities" for federal income tax purposes. Under these circumstances, CopperCom, as owner of the disregarded entities, was treated as holding directly each entity's assets and liabilities.

and the Holdings Operating Agreement, which provide that the 100% interest member

of Conex is Holdings and the 100% interest member of Holdings is CopperCom,

respectively.[68] Sections 8.2 of the Conex Operating Agreement and Holdings Operating

Agreement both provide that "[e]xcept as otherwise required by applicable provisions of

tax law, Company taxable income and loss shall be allocated to the Member in proportion

to its Percentage Interest."[69]

Notwithstanding the Operating Agreements, the Trustee's claim for breach of the

implied covenant is premised on the existence of the (alleged) implied-in-fact TAA that

the Trustee seeks to establish through the parties' course of performance.  The Trustee

argues that Conex's practice of recording the tax benefit derived from the utilization of

its 2009 and 2010 NOL on a monthly basis suggests that it was following a protocol

whereby CopperCom would pay to Conex the amount by which Conex's NOLs reduced

the CopperCom Group's consolidated tax liability.  The Trustee further argues that

CopperCom's reversal of the accounting entries indicating a receivable due to Conex for

use of its NOLs constituted "arbitrary or unreasonable conduct which ha[d] the effect of

preventing [Conex] from receiving the fruits" of the TAA.[70]

Taking all of the allegations in the Complaint as true, the Trustee has failed to

allege sufficient facts to support a claim for breach of the implied covenant of good faith

---

Complaint at ¶¶ 25-27.

[68] *Id.*

[69] Motion to Dismiss, Exhs. A-B.

[70] *Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) (citing *Wilgus v. Salt Pond Inv. Co.*, 498 A.2d 151, 159 (Del. Ch. 1985) (construing Restatement § 205)).

and fair dealing because the Operating Agreements and federal income tax law permit the exact conduct of which the Trustee complains.[71]   The Trustee alleges, and the Operating Agreements show, that Conex's single member is Holdings, and in turn, Holdings' single member is CopperCom.   As discussed *supra*, for federal income tax purposes, the Defendant was treated as directly holding Conex's assets and liabilities, including NOLs and the tax benefits derived therefrom, because of Conex's status as a disregarded entity.   The terms of the Operating Agreement control and federal income tax law provides the Defendant with the right to use Conex's NOLs and the related federal income tax benefits to offset the CopperCom groups taxable income.

To the extent the Trustee relies on the existence of the (alleged) implied-in-fact TAA for this claim, the Trustee has failed to allege sufficient facts plausibly establishing the agreement.   A valid contract exists when "(1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the parties exchange legal consideration."[72] An implied-in-fact contract "is one inferred from the conduct of the parties, though not expressed in words.   The parties' intent and mutual assent to an implied-in-fact contract is proved through conduct rather than words."[73]

---

[71] *Dunlap*, 878 A.2d at 441.   "Existing contract terms control, however, such that implied good faith cannot be used to circumvent the parties' bargain, or to create a 'free-floating duty...unattached to the underlying legal document.'"   *Id.* (quoting *Glenfed Financial Corp., Commercial Finance Div. v. Penick Corp.*, 647 A.2d 852, 858 (N.J. 1994).

[72] *Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010).

[73] *Capital Management Co. v. Brown*, 813 A.2d 1094, 1098 (Del. 2002) (internal citations omitted).   The Supreme Court has defined an implied-in-fact contract as one "founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Baltimore & Ohio R.R. Co. v. United States*, 261 U.S. 592, 597 (1923).

The only allegations to support the existence of the TAA are that Conex carried on its books and records an open and due receivable arising from the Defendant's use of the tax benefits derived from Conex's 2009-2011 NOLs, and that the Defendant made an entry in its general ledger offsetting the receivables due to Conex. The Trustee failed to plead facts plausibly show the parties' intent and mutual assent to bind them to contract.[74] The Court will dismiss Count II of the complaint without prejudice. The Trustee may amend the Complaint to allege additional facts consistent with this Opinion.

### E. Count III: Unjust Enrichment

Unjust enrichment is "'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.'"[75] The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of a justification, and (5) the absence of a remedy provided by law.[76]

---

[74] The Trustee made certain allegations with respect to the parties' intent in his Opposition; however these allegations were not made in the Complaint, and the Court will not consider them. The Opposition includes exhibits annexed thereto totaling almost 600 pages including tax returns, accounting guidelines, and the declaration of Bernard W. Costich. Pursuant to this Court's Order dated May 16, 2011 [Del. Bankr. No. 11-10501, D.I. 99], the Trustee retained Crowe Horwath LLP ("Crowe") as his accountants. Mr. Costich is the partner-in-charge at Crowe's New York City Office's Bankruptcy and Insolvency Practice. Adv. Pro. No. 13-50939, D.I. 22, Declaration of Bernard W. Costich (the "Costich Declaration"), ¶¶2-3. The Costich Declaration describes and asserts that Heico directed the Defendant to reimburse Conex for utilization the tax benefits derived from Conex's NOLs. *Id.* at ¶¶ 7-23. However, the Court will not consider allegations in the Opposition that are not made in the Complaint. "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007).

[75] *MCG Capital Corp. v. Maginn*, 2010 WL 1782271, at *24 (Del. Ch. May 5, 2010) (quoting *Schock v. Nash*, 732 A.2d 217, 232 (Del. 1999)).

[76] *Jackson Nat. Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393 (Del. Ch. 1999).

The Defendant argues that Count III should be dismissed because the Trustee has failed to plausibly allege facts establishing a claim for unjust enrichment, specifically that the Defendant's retention and use of Conex's 2009, 2010, and 2011 NOLs resulted in an impoverishment to Conex.  In support, the Defendant asserts that the Trustee has failed to allege that Conex had prior income or expected future income and would have been able to use the NOLs to enhance the estate.

The Trustee alleges that Conex's 2009, 2010, and 2011 NOLs are property of the estate, and the Defendant was unjustly enriched by demanding and procuring the benefit of Conex's tax losses.  As a result, the Defendant and other profitable members of the consolidated tax group received a substantial benefit at Conex's expense.  The Trustee urges the Court to deny the Motion to Dismiss because, at this stage in the pleading, the Trustee "is entitled to the benefit of discovery to prove" his claims.[77]

Relevant provisions of the I.R.C. require the CopperCom Group's profitable members carry each year's NOLs back the statutorily mandated number of years.[78]  If the NOLs were exhausted after the carryback, there was nothing left to carry over.[79]  The I.R.C. allows the carryover of NOLs against future taxable income to the extent the NOLs

---

[77] Opposition at p. 31.  The Trustee relies on *In re Forman Enters., Inc.*, 273 B.R. 408 (Bankr. W.D. Pa. 2002), to support the unjust enrichment claim.  The shareholder-defendants in *Forman* argued, as the Defendant does in this instance, that the net operating losses did not have value to the debtor because the debtor (an S-Corporation in *Forman*) did not pay taxes.  *Id*. at 412.  The *Forman* Court reasoned that "whether the NOL had any value *for debtor* misses the point . . . .  The NOL might be viewed as providing a substantial benefit *for defendants* which debtor conferred on them as a result of their own course of conduct and which would be unconscionable for them to retain."  *Id*. (emphasis in original).

[78] 26 U.S.C. § 172.

[79] *White Metal Rolling*, 222 B.R. at 426.

are not extinguished when carrying them back against prior taxable income. The CopperCom Group would have lost the NOLs had it not used them because the I.R.S. would have deemed the NOLs to have been carried back.[80] Further, nothing in the I.R.C. or Treasury Regulations requires members of a consolidated group to compensate the group, the parent, or any other member for the incurrence of income or loss that may generate either a tax liability or benefit for the group.[81]

Taking all of the allegations in the Complaint as true, the Trustee has failed to allege sufficient facts to support a claim for unjust enrichment. The complaint does not allege that Conex had prior or current taxable income that could have been offset by carrying back the NOLs. The complaint does not allege that Conex realized taxable income at any time prior to the bankruptcy, and therefore could have carried the NOLs back or forward to reduce that taxable income. The Trustee does not allege that Conex has any prospect for future income. Conex is in a chapter 7 liquidation and no longer operates. The Trustee has failed to allege that the Defendant's use and retention of Conex's NOLs resulted in an impoverishment to Conex. The Court will dismiss Count

---

[80] *Marvel*, 273 B.R. 58 (citing 26 C.F.R. §§ 1.1502-2; 1.1502-11; 1.1502-12; 1.1502-21A).

[81] *Id.* at 65. Nonetheless, it is not uncommon for members of a consolidated group to provide for the allocation of these liabilities and benefits among themselves by entering into tax sharing agreements. *Id.*

> The NOL had value only to the extent that the subsidiary could use it to offset future income or bargain with other members of the affiliated group for its use. Since the subsidiary was undergoing liquidation, the NOL had no carryover value because the subsidiary had no prospect of future income. Further, the subsidiary had no bargaining leverage because it had consented to the filing of the consolidated return and the governing regulations, and the use of the NOLs was presumably consistent with those rules.

*Id.* at 425 (citing *Jump v. Manchester Life & Cas. Management Corp.*, 579 F.2d 449, 453-54 (8th Cir. 1978).

III without prejudice.  The Trustee may amend the Complaint to allege additional facts consistent with this Opinion.

**F.  Counts IV and V: Avoidance of Transfers Pursuant to 11 U.S.C. Section 549 and Recovery and Preservation of the Transfers Pursuant to 11 U.S.C.  Section 550**

Pursuant to Section 549, a chapter 7 trustee may avoid: (1) a transfer, (2) of property of the bankruptcy estate, (3) that occurs after the commencement of the bankruptcy case, and (4) that was not authorized by any provision of the Bankruptcy Code or by order of the bankruptcy court.[82]  Section 550 provides that "to the extent that a transfer is avoided under section . . . 549 . . . of this title, the trustee may recover . . . the property transferred . . . from the initial transferee of such transfer or the entity for whose benefit such transfer was made."[83]

Count IV asserts a claim for avoidance to the extent the Debtors transferred any of their 2010 or 2011 tax losses to the Defendant for utilization in the consolidated federal income tax filings for 2010 and 2011.  Count V asserts a claim for recovery and preservation of the transfers asserted in Count IV.

The Defendant argues that Count IV, and thus Count V, should be dismissed because there was no transfer within the meaning of the Bankruptcy Code.  In support, the Defendant contends that the 2010 and 2011 NOLs were never Conex's property because it was a disregarded entity for federal income tax purposes.  And as a disregarded entity, there was never a transfer of the NOLs from Conex to the Defendant

---

[82] 11 U.S.C. § 549.

[83] 11 U.S.C. § 550.

within the meaning of the Bankruptcy Code because the Defendant was treated as holding directly the NOLs.

The Trustee argues that Section 549 does not require the debtor to affirmatively act in order to constitute a transfer of property.[84]  The Trustee argues that the 2010 and 2011 NOLs are property of Conex's estate.

The Defendant filed consolidated federal tax returns for the CopperCom Group in accordance with the I.R.C.  In doing so, the Defendant was required to apply the CopperCom Group's consolidated NOLs, and the Defendant as the parent of the CopperCom Group, was responsible for filing the consolidated federal income tax return and paying any federal income tax due on behalf of all group members regardless of whether the Defendant and Conex entered into a TAA. [85]

The CopperCom Group's consolidated tax return reflects the income and losses of the CopperCom Group as a single entity, even though the individual members, including Conex, had to first calculate its taxable income in the same manner as if it were filing its own federal tax return.[86]  The Defendant, as the parent of the CopperCom Group, did not have discretion as to whether to take NOLs from its group members, rather the manner

---

[84] Opposition at pp. 30-31; *see Forman*, 273 B.R. at 416 ("Nowhere is there any indication in the Bankruptcy Code that action, as opposed to inaction, by a debtor is required for there to be a transfer.").

[85] *In re Marvel Ent. Grp., Inc.*, 273 B.R. 58, 84 (D. Del. 2002) (citing 26 C.F.R. §§ 1.1502-6).  "No agreement entered into by one or more members of the group with any other member of such group or with any other person shall in any case have the effect of reducing the liability prescribed under this section."  26 C.F.R. §§ 1.1502-6.

[86] 26 C.F.R. §§ 1.1502-11; 1.1502-12.

in which NOLs were consolidated and applied is mandated by the I.R.C. and corresponding regulations.[87]

Assuming, *arguendo*, that the parties entered into the TAA, the Debtors would necessarily calculate hypothetical stand-alone NOLs in order to file a consolidated tax return.[88]  These hypothetical stand-alone NOLs are not "property of the debtor because they [are] a legal fiction."[89]  Here, the receivables listed on Conex's books and records appear to be calculations to determine Conex's individual NOLs so that the Defendant could determine the CopperCom Group's consolidated NOLs for the consolidated federal income tax return.  No actual transfer as contemplated by the Bankruptcy Code occurred when the Defendant applied Conex's NOLs to the calculation of income tax due from the CopperCom Group because those NOLs were held directly by the Defendant for purposes of federal income tax law.[90]  And, as explained, *supra*, the Trustee fails to allege that the NOLs had value to Conex.  Therefore, the policy behind avoidance actions is not implicated.[91]  The Court will dismiss Count IV without prejudice.  Likewise, the

---

[87] *Marvel*, 273 B.R. at 84; *see also White Metal Rolling*, 222 B.R. at 424 ("the parent has no discretion; the consolidated NOL is applied to prior years in the statutorily mandated order, and then carried forward only if that prior years' consolidated income does not fully absorb it.")

[88] *Marvel*, 273 B.R. at 85.

[89] *Id.*

[90] *Id.*; *see also United Dominion Indus. v. U.S.*, 532 U.S. 822 (2003) (concept of separate NOLs for individual members of a consolidated tax group does not exist).

[91] *White Metal Rolling*, 222 B.R. at 427 ("[I]f the debtor transfers property that would not have been available for distribution to his creditors in a bankruptcy proceeding, the policy behind the avoidance power is not implicated.") (citing *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 58 (1990)).  "This is consistent with the longstanding rule that a creditor cannot recover transferred property if the property could not have been used to satisfy the creditor's claim."  *Id.*; *see, e.g., Bryce v. National City Bank*, 93 F.2d 300, 302 (2d Cir. 1937).

Court will dismiss Count V without prejudice.  The Trustee may amend the Complaint to allege additional facts consistent with this Opinion.

### G.  Leave to Replead

The Trustee requests that the Court allow leave to file an amended complaint in the event that the Court concludes that more factual detail is needed or the claims are insufficient in some manner.[92]

Federal Rule of Civil Procedure 15(a), as made applicable to adversary actions pursuant to Federal Rule of Bankruptcy Procedure 7015, provides that "leave [to amend] shall be freely given when justice so requires."  The Court grants the Trustee leave to replead with respect to Counts II, III, IV, and V — those dismissed without prejudice.

<u>CONCLUSION</u>

For the foregoing reasons, the Motion to Dismiss Count I will be granted with prejudice and the Motion to Dismiss Counts II, III, IV, and V will be granted without prejudice.  The Court grants the Trustee leave to amend the Complaint within twenty-eight (28) days of the issuance of this Opinion.  An order will be issued.

---

[92] Opposition at p.7.